UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

PATRICK M. COLE,

                    Defendant.

**REPORT
and
RECOMMENDATION**

**04-CR-292A(F)**

---

APPEARANCES:        MICHAEL A. BATTLE
                    United States Attorney
                    Attorney for Government
                    GRETCHEN L. WYLEGALA
                    Assistant United States Attorney, of Counsel
                    138 Delaware Avenue
                    Buffalo, New York 14202

                    JOSEPH B. MISTRETT
                    Federal Public Defender
                    Attorney for Defendant
                    TIMOTHY W. HOOVER
                    Assistant Federal Public Defender, of Counsel
                    300 Pearl Street
                    Suite 450
                    Buffalo, New York 14202

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on

May 12, 2005 for pretrial matters, including report and recommendation on dispositive

motions.  The matter is presently before the court on Defendant's motion to suppress

(Doc. No. 11), filed April 1, 2005.

**BACKGROUND**

Defendant Patrick M. Cole ("Defendant") was charged in a 15 count indictment ("Indictment"), dated November 2, 2004, with violating 18 U.S.C. § 1341.  Specifically, Defendant is charged with mail fraud in connection with a fraudulent investment scheme, known as a "Ponzi" scheme,[1] involving Defendant's business, Sanssueci, Inc.[2] Defendant allegedly defrauded victim investors of more than $ 1.5 million during the period December 2001 through March 2004.

On April 1, 2005, Defendant filed a pretrial motion requesting, *inter alia*, suppression of physical evidence seized from Defendant's residence during a search conducted pursuant to a search warrant issued in connection with the underlying investigation.  (Doc. No. 11).  Attached to the motion is a Memorandum of Law ("Defendant's Memorandum"), and Defendant's Exhibits A through D.  On April 26, 2006, the Government filed a Demand for Discovery and Inspection (Doc. No. 12), and, in opposition to Defendant's motion, the Government Response to Defendant's Pre-Trial Motions (Doc. No. 13) ("Government's Response").  At oral argument on May 10, 2005, the court resolved Defendant's and the Government's requests for non-dispositive relief and reserved decision on the motion to suppress.  Based on the following, Defendant's motion to suppress should be DENIED without a hearing.

---

[1] "A Ponzi scheme is one in which investor profits are manufactured from newly-attracted investment principal rather than through the success of the underlying business venture, creating a self-perpetuating cycle of fraud.  Essentially, investors are drawn by the promise of high returns, but the scheming entity can pay those returns only for so long as it continues to attract further investment." *S.E.C. v. Credit Bancorp, Ltd.*, 386 F.3d 438, 441 n. 1 (2d Cir. 2004).

[2] Defendant's business is spelled various ways, without explanation.

**FACTS**[3]

Defendant seeks to suppress evidence seized from his residence, a first floor apartment located at 85 Roma Avenue,[4] Buffalo, New York, during the execution of a search warrant on October 31, 2003.  The search warrant, issued on October 31, 2003,[5] was supported by the Affidavit of Federal Bureau of Investigation ("FBI") Special Agent James F. Lafferty II ("Agent Lafferty") ("Lafferty Affidavit"), and a supplemental affidavit of Agent Lafferty ("Lafferty Supplemental Affidavit"),[6] authorizing the search and seizure of computers and related equipment, including hardware and software, as well as any passwords needed to access information on any computers, and various business and personal records relating to the alleged Ponzi scheme.  Search Warrant Attachment A.

In support of the search warrant application, Agent Lafferty explains that on February 3, 2003, FBI Special Agent David Washington ("Agent Washington") interviewed Defendant on an unrelated matter and, during the course of the interview, learned that Defendant owns a personal computer which Defendant used to check his stock on a daily basis.  Lafferty Affidavit ¶ 5.  According to Agent Washington, Defendant stated that he resided with his wife and son. *Id*.

The investigation into Defendant's alleged Ponzi scheme was triggered on

---

[3] Taken from the pleadings and motion papers filed in this action.

[4] Defendant's papers make several references to "185 Roma Avenue."  *See, e.g.*, Defendant's Memorandum at 3, 4.  Absent any indication otherwise, the court assumes such references to be typographical errors.

[5] Attached as Exhibit C to Defendant's Memorandum.

[6] Respectively attached as Exhibits A and B to Defendant's Memorandum.

August 1, 2003 when Alden State Bank filed a Suspicious Activity Report indicating that Defendant was involved in certain financial activity that appeared related to a Ponzi scheme.  Lafferty Affidavit ¶ 6.  A review of Defendant's accounts at Alden State Bank and other banks, including Charter One Bank, HSBC and M&T Bank, showed activity between 2001 through 2003 consistent with a Ponzi scheme, including large deposits into Defendant's bank accounts, which money was then redistributed in the form of checks payable to other investors or withdrawn as cash from Defendant's accounts. Lafferty Affidavit ¶¶ 8-9.

Subsequent interviews with the people whose money had been deposited into Defendant's bank accounts confirmed that putative investors had provided money to Defendant based on the belief that Defendant was investing it, Lafferty Affidavit ¶¶ 8,12, 14, 17, 18, although no account activity was consistent with any investment, and there was no evidence that Defendant was a licensed securities dealer.  *Id*. ¶¶ 9-11, 14-16.  In particular, on October 29, 2003, Agent Lafferty interviewed Michael and Nancy Noody who stated they gave Defendant personal checks on January 14, 2003 for $10,000, and on March 31, 2003 for $ 8,000.  *Id*. ¶ 13.  On January 14, 2003, Defendant used the $ 10,000 check to purchase two cashier checks, one in the amount of $ 6,000 and the other in the amount of $ 2,500, made payable, respectively, to Thomas W. Landahl ("Landahl") and Steven A. Dembinski ("Dembinski"), the latter also being an investor with Defendant, and the remaining $ 1,500 was deposited into Defendant's Alden State Bank account.  *Id*. ¶ 8.  Interviews with other people whose money Defendant had deposited into his bank accounts revealed that the money was given to Defendant believing it would be invested.  *See id*. ¶¶ 12 (Lisa Walker, wife of

4

Clint Walker, stated Clint Walker quit his job in the fall of 2000 after Defendant informed

that the Walkers' investment money had grown to $ 1.9 million); 14 (Zachary Salim, in

January 2003,  invested $ 21,000 with Defendant who advised the money would be

invested in stock options through trades conducted on-line); 17 (Donald Brotz, on April

9, 2003, gave Defendant a personal check in the amount of $ 5,000 for stock

investments to be made in Las Vegas); and 18 (Michelle Kushner, on October 13,

2003, gave Defendant $ 1,000 in cash for Defendant to invest on Kushner's behalf,

although Kushner was not aware how Defendant had invested her money and never

received any statements from Defendant).

Defendant met and dealt with his putative investors at private homes or bars and

restaurants, telling them he maintained business offices in Buffalo and Las Vegas.

Lafferty Affidavit ¶¶ 13, 14, 17, 18.  The investors provided Defendant with documents

and information, including personal information on 3" X 5" index cards and right of

survivor information.  *Id*. ¶¶ 13, 17.  Defendant indicated he would provide periodic

investment statements and he did provide receipts.  *Id*. ¶¶ 13-14.  Agent Lafferty

contacted the Securities Exchange Commission, the National Futures Association, and

the National Association of Securities Dealers, and learned that Defendant was not

licensed as a securities or commodities broker.  *Id*. ¶ 15.

Defendant resided at 85 Roma Avenue, Buffalo, New York with his wife and son.

Lafferty Affidavit ¶¶ 2, 5.  A search of the trash outside 85 Roma Avenue, conducted by

the investigators on October 23, 2003, one week before the search warrant application

was made for Defendant's residence, revealed documents pertaining to Sansuecie

investments and the alleged Ponzi scheme, including a computer-generated statement

detailing investments in five separate companies located in Las Vegas, Nevada, held in the name of "Sanssueci Inc. Corporate Account," including $140,728 invested in "Scottrade."  Lafferty Affidavit ¶ 10.  In an interview conducted on October 27, 2003, the Williamsville, New York Scottrade branch manager advised that as of October 27, 2003, Defendant had one individual Scottrade account, the balance of which was $324.35, one joint account with Clint Walker, the balance of which was $2,018, but that there was no trading activity in either account during 2003 and the Scottrade Las Vegas, Nevada branch had no investment accounts with Defendant, Walker, Sanssuecie, Inc., or SansSuecie, Inc.  *Id*. ¶ 11.  Both Defendant and Walker listed as their employer address 1569 Hertel Avenue, Buffalo, New York 14216, although a physical surveillance of that address conducted on August 19, 2003 by FBI Special Agent Malynda Irby revealed a vacant store located at the address, with an exterior sign reading "Sans Souci Tobacconist and Newstand [*sic*]."  *Id*.  On an "Options Application and Agreement" document obtained from Scottrade and signed by Defendant on July 30, 1998, Defendant indicated he was president of Sanssuecie, Inc., with an annual salary of $ 106,000, and approximate net worth and liquid assets of $ 500,000 each, while on a subsequent "Options Application and Agreement" signed by Defendant on January 25, 2001, Defendant indicated his annual salary as $ 106,000, his approximate net worth as $ 500,000 and his approximate liquid assets as $ 100,000.  *Id*.  Further, Defendant filed for Chapter 7 bankruptcy on April 27, 1999.  *Id*.

On October 30, 2003, the day prior to the search of Defendant's residence, FBI agents conducted a physical surveillance of 85 Roma Avenue, during which Defendant spoke with one of the agents and informed the agent that Defendant was "going to the

bank." Lafferty Affidavit ¶ 2. In support of the search warrant application, Agent Lafferty explained that he knew, based on his knowledge, training and experience, that searches and seizures of evidence from computers commonly required law enforcement agents to seize most or all computer items, including hardware, software and instructions, for later processing by a qualified computer expert in a suitable environment. *Id*. ¶¶ 20-23. The search warrant application requested permission to search the entire residence located at 85 Roma Avenue, which was then thought to consist of a single family residence, as well as the detached garage. However, upon arriving at the address to execute the search warrant, the agents were informed by Defendant, who was home, that the structure was not a single family residence but, rather, had been divided into two apartments, with the first floor apartment occupied by Defendant and his wife, whereas Defendant's son occupied the second floor apartment. *Id*. ¶ 2. Further, only Defendant's son used the detached garage. *Id*. This information was detailed in a second affirmation submitted to the court by Agent Lafferty and the search warrant was revised, limiting the scope of the authorized search to the first floor apartment at 85 Roma Avenue. Lafferty Supplemental Affidavit ¶ 2. The agents then returned to 85 Roma Avenue where they executed the revised search warrant, seizing numerous items including, *inter alia*, documents and check registers pertaining to various bank accounts, computers and related equipment, computer software, floppy discs, tax returns and financial statements. Search Warrant Return.[7]

---

[7] Attached as Exhibit D to Defendant's Memorandum.

## DISCUSSION

Defendant moves to suppress the evidence seized from his residence at 85 Roma Avenue, as well as statements Defendant made to the federal agents who executed the search warrant, arguing that the search warrant issued without probable cause given that although the search warrant application established Defendant was involved in criminal activity, it failed to establish that any criminal activity occurred at, or that the property or fruits of any crime were present at 85 Roma Avenue, Defendant's Memorandum at 13-15, and that the search warrant was overly broad insofar as it permitted the seizure of all "business records." *Id*. at 15-16.  Defendant argues that the "good faith exception" by which an otherwise facially flawed search warrant is considered valid does not apply and the only remedy for the seizure of evidence pursuant to the allegedly invalid search warrant is suppression of such evidence as fruit of the poisonous tree.  Defendant's Memorandum at 16-18.  Defendant further requests the court conduct a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) ("*Franks* hearing") on the probable cause issue.  Defendant's Memorandum at 17.

The Government argues in opposition to the motion to suppress that (1) the search warrant application sufficiently established probable cause that evidence of the alleged Ponzi scheme would be found in Defendant's residence at 85 Roma Avenue, Government's Response at 7-9, (2) the search warrant was not overly broad, especially in light of the nature of the underlying investigation, *id.* at 9-13, (3) even assuming, *arguendo*, that the search warrant was not supported by probable cause or was overly broad, the good faith exception to the exclusionary rule applies, *id.* at 13-14, and (4) there is no need for a *Franks* hearing, *id.* at 14-16.

8

1.     **Probable Cause**

The Fourth Amendment protects the rights of the people to be secure in their

persons, houses, papers, and effects against unreasonable searches and seizures.

*Arizona v. Evans*, 115 S.Ct. 1185, 1191 (1995).  This right "shall not be violated, and no

warrants shall issue, but upon probable cause, supported by oath or affirmation, and

particularly describing the place to be searched or the thing to be seized."  U.S. Const.

Fourth Amend.

In determining whether probable cause for a search warrant exists, the issuing

judicial officer is simply to make a practical common sense decision whether, given the

"totality of the circumstances" set forth in the affidavit, including the veracity and basis

of knowledge of persons supplying hearsay information, there is a fair probability that

contraband or evidence of a crime will be found in a particular place.  *Illinois v. Gates*,

462 U.S. 213, 238-39 (1983).  An issuing judge's determination of probable cause will

be upheld if he had a "substantial basis for concluding that a search would uncover

evidence of wrongdoing."  *Gates*, 462 U.S. at 236.  An affidavit in support of an

application for a search warrant demonstrates a proper showing of probable cause

when it sets forth facts which are sufficient to induce a reasonably prudent person to

believe that a search of the areas described within the warrant will uncover evidence of

a crime.  *Berger v. New York*, 388 U.S. 41, 55 (1967).

Significantly, a judge's determination of probable cause should be given great

deference by a reviewing court.  *Gates*, 462 U.S. at 236; *United States v. Nichols*, 912

F.2d 598, 602 (2d Cir. 1990).  The resolution of marginal cases should be determined

with regard to the preference accorded to warrants.  *Jones v. United States*, 362 U.S.

257, 270 (1960).  In assessing a probable cause determination, "[t]he only questions for the Court are whether the [affiant's] reliance on that informant was reasonable, and whether the Magistrate was fully informed of all necessary facts when she made her finding of probable cause for the issuance of the search warrant." *United States v. Smith*, 9 F.3d 1007, 1013 (2d Cir. 1993).

Defendant urges the court to suppress evidence seized from his residence on the basis that the search warrant application failed to establish the requisite probable cause because nothing within the search warrant application, including the Lafferty Affidavit, suggests that any criminality occurred at 85 Roma Avenue, or that any documents relating to the suspected criminality, *i.e.*, the Ponzi scheme, would be found at 85 Roma Avenue.  Defendant's Memorandum at 13-15.  In opposing the motion to suppress, the Government argues that as the fraudulent investment scheme under investigation would necessarily have involved the generation of paperwork and documents, and given that it is undisputed that Defendant used a computer in furtherance of the alleged scheme, "common sense" dictated that evidence of the scheme would be found at Defendant's place of residence or office which, in this case, were both located at 85 Roma Avenue.  Government's Response at 8-9.

Initially, the court observes that Defendant refers to no caselaw supporting his novel theory that probable cause to support a search warrant requires evidence that the criminal activity under investigation actually occurred at the place to be searched and the court's research has revealed none.  Rather, at least one other district court within the Second Circuit has rejected the notion that a search warrant for a defendant's residence was defective because the search warrant failed to establish that an alleged

fraudulent investment company had any connection with the defendant's residence. *United States v. Markey*, 131 F.Supp.2d 316, 322-23 (D.Conn. 2001), *aff'd sub nom. United States v. Simpson*, 69 Fed. Appx. 492 (2d Cir. 2003) (table).  Specifically, in *Markey*, *supra*, the defendant moved to suppress evidence seized from his home pursuant to a search warrant issued in connection with an investigation into an alleged Ponzi scheme, arguing that nothing within the search warrant application established that the business in whose name the defendant allegedly conducted the scheme had any connection with the defendant's residence.  *Markey*, *supra*, at 322.  The court denied the motion, stating that because the defendant's "investors" had been instructed to mail funds to be invested to the defendant's business postal mail box, maintained through a commercial mail service, which the defendant had opened using his home address, and because the defendant had no known office outside his residence, all indications were that the defendant operated the alleged Ponzi scheme from his residence such that a "commonsense reading" of the investigating agent's affidavit submitted in support of the search warrant supported the conclusion that evidence of criminality would be found at the defendant's residence.  *Id*.

Similarly, in the instant case, a thorough review of the Lafferty Affidavit submitted in support of the search warrant application establishes the requisite probable cause for the warrant even though nothing within the search warrant application establishes that 85 Roma Avenue was the site of any conduct involved in the alleged fraudulent scheme.  In particular, on February 3, 2003, Defendant told Agent Washington that he owned a personal computer which he used daily to check his stock investments. Lafferty Affidavit ¶ 5.  Although Defendant maintained he was employed as the

11

President of an investment firm, Sans Suecie, Inc., only a vacant store front was located at the address Defendant provided for the firm, *i.e.*, 1569 Hertel Avenue, Buffalo, New York.  Lafferty Affidavit ¶ 11.  No other address for Sans Suecie, Inc., is provided.  Additionally, a search of the trash outside 85 Roma Avenue revealed computer generated statements pertaining to investments held in the name of "Sanssuecie, Inc."  Lafferty Affidavit ¶ 10.  Furthermore, Defendant's New York State driver's license lists Defendant's address as 85 Roma Avenue, *id*. ¶ 2,  which is consistent with an FBI query of the National Comprehensive Report using Defendant's biolographical information, that showed Defendant's address as 85 Roma Avenue.  *Id*. ¶ 5.  Defendant does not assert that his home address is anything other than 85 Roma Avenue.

Accordingly, the search warrant application sufficiently established probable cause that, as Defendant maintained no other address in the Buffalo area, including a legitimate business address, any business records generated with regard to investments made by people in the Buffalo area, would be found at Defendant's home where Defendant's owned personal computer on which he checked stock investments on a daily basis.  *See* Markey, *supra*, at 322.  As such, Defendant's motion to suppress evidence seized from his residence on the basis that the warrant issued without the requisite probable cause that evidence of the alleged Ponzi scheme would be found at Defendant's residence should be DENIED.

**2.      Scope of the Search Warrant**

Defendant argues that the search warrant authorized "a general, all records

search" without any limitations, as evidenced by the items seized, including two computers, and all kinds of records including records that were not related to the underlying investigation, and that such a broad, unlimited search violated the Fourth Amendment.  Defendant's Memorandum at 15.  The Government argues in opposition that the search warrant did not authorize the seizure of all records on the premises but, rather, specified the types of documents likely to be found at Defendant's residence based on the search warrant application and that, given the nature of the underlying investigation, the records authorized for seizure was not so overly broad as to be an unconstitutional general search.  Government's Response at 9-13.

The Fourth Amendment's particularity requirement is intended to restrict the scope of searches conducted pursuant to lawful search authority.  *Stanford v. Texas*, 379 U.S. 476, 481-86 (1965).  *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) ("the problem is not that of the intrusion *per se*, but of a general, exploratory rummaging of a person's belongings.").  In fact, the Supreme Court has long observed that "[t]he requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another."  *Marron v. United States*, 275 U.S. 192, 196 (1927).  Nevertheless, where law enforcement agents have done their best under the circumstances, including acquiring "all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were covered in the warrant," a greater ambiguity is tolerated by courts in considering search warrant applications.  *United States v. Young*, 745 F.2d 733, 759 (2d Cir. 1984).

The Second Circuit has observed in upholding the seizure of evidence against

particularity challenges that "[i]n upholding broadly worded categories of items available for seizure, we have noted that the language of a warrant is to be construed in light of an illustrative list of seizable items."  *United States v. Riley*, 906 F.2d 841, 844-45 (2d Cir. 1990).  In particular, provided the category of seizable papers had been adequately described, including an illustrative list of seizable items, "the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category." *Riley*, *supra*, at 845.  In other words, a search warrant that permits the executing agents to ascertain and identify with reasonable certainty those items authorized for seizure is sufficiently particular.  *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992).

In the instant case, the search warrant did not authorize an unlimited general search and seizure of all documents found inside Defendant's residence.  Rather, the search warrant provides categories of seizable papers and includes illustrative lists of seizable items.  Two example of categories of seizable papers included in the search warrant are "Investor records, including but not limited to names and addresses of investors, memoranda of meetings and contacts with investors," and "Business financial records, including but not limited to bank statements, checks, deposit slips, withdrawal slips and other evidence of bank transactions."  Search Warrant Attachment A.  Given the nature of the underlying investigation, *i.e.*, a Ponzi scheme, evidence of the scheme would likely be among such documents.  The court thus finds the categories of seizable items adequately defined such that the search warrant did not authorize a general search, and this aspect of Defendant's motion to suppress should be DENIED.

3.      **Good Faith Exception**

The exclusionary rule barring illegally obtained evidence does not apply to evidence seized in "objectively reasonable" reliance on a warrant issued by a detached and neutral magistrate, even where the warrant is subsequently deemed invalid. *United States v. Leon,* 468 U.S. 897, 926 (1984). "The test of objective good faith is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (quoting *Leon*, *supra*, at 922 n. 23).

The good faith exception does not apply in certain situations, including (1) where the issuing magistrate has been knowingly misled; (2) where the judicial role was wholly abandoned by the issuing magistrate; (3) where the search warrant application is so lacking in indicia of probable cause as to render reliance on it unreasonable; and (4) where the warrant is so facially deficient that the executing agent's reliance on it is unreasonable. *Leon*, *supra*, at 923. Here, Defendant invokes the fourth situation in asserting that the good faith exception does not apply, maintaining that because the search warrant directs the seizure of records without offering any guidelines, it permitted the executing agents to act on their own discretion such that the warrant is so facially deficient as to render the agents' reliance on it unreasonable. Defendant's Memorandum at 17.

Even assuming that the warrant application failed to establish the requisite probable cause to search, the evidence seized as a result of the execution of the warrant should be admitted because the agents relied in good faith on the warrant and Defendant fails to demonstrate otherwise. Specifically, there is nothing to suggest that

15

Agent Lafferty recklessly or deliberately misled the court in the warrant application.   Nor

is there anything in the record suggest that the circumstances under which the search

warrant was issued is akin to any of the four situations in which the Supreme Court has

held the good faith exception inapplicable.   *See Leon*, *supra*, at 923.   As discussed,

*supra*, at 12-14, the scope of the search warrant is not so broad as to render the

executing agents' reliance on it unreasonable.

As such, the good faith exception to the exclusionary rule would apply and

Defendant's motion to suppress on this alternative basis should be DENIED.


**4.     *Franks* hearing**

Defendant asserts that a *Franks* hearing is necessary because the Lafferty

Affidavit supporting the search warrant application contains a "glaring

misrepresentation," *i.e.*, that the dwelling at 85 Roma Avenue was a "single family

residence," Lafferty Affidavit ¶ 2, although the dwelling actually consists of two separate

apartments, one on the first floor of the structure and the second on the second floor.

Defendant's Memorandum at 17.   According to Defendant, as the error goes to the

"core" of the search warrant application, that is, the place to be searched, a *Franks*

hearing is necessary to determine whether the search warrant was issued without

probable cause.   *Id*.   The Government argues in opposition that the "glaring

misrepresentation" which Defendant argues necessitates a *Franks* hearing was not a

"deliberate falsehood" and, moreover, the error was corrected after a physical

surveillance of the property revealed that two separate residences occupied the

dwelling at 85 Roma Avenue.   Government's Response at 15.   The Government further

maintains that Defendant has failed to establish how the error undermines the finding of probable cause for the warrant.  *Id*.

Under *Franks* and its progeny,

> if a search warrant contains a false statement or omission, and the defendant makes a substantial preliminary showing (1) that the false statement or omission was knowingly and intentionally, or with reckless disregard for the truth, included by the government in a search warrant affidavit, (2) that the information was material, and (3) that the affidavit's remaining content is insufficient to establish probable cause, then the fruits of the search must be suppressed.

*United States v. Bianco*, 998 F.2d 1112, 1125 (2d Cir. 1993) (citing *Franks, supra*, at 155-56), *cert. denied*, 511 U.S. 1069 (1994).

Specifically, "[a] defendant is entitled to a *Franks* hearing upon a 'substantial preliminary showing' that the affiant 'knowingly and intentionally, or with reckless disregard for the truth,' included in the affidavit a false statement *necessary to the finding of probable cause*."  *United States v. Millar*, 79 F.3d 338, 342 (2d Cir. 1996) (emphasis added) (quoting *Franks, supra*, at 155-56).

Before a defendant is entitled to a hearing to test the truthfulness of a warrant's underlying affidavits, however, the "defendant must make a 'substantial preliminary showing' that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding."  *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (citing *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987)).  Although an affidavit in support of a search warrant application may contain both lawful and tainted allegations, a search warrant issued on the basis of such affidavit remains valid if probable cause is found based on an independent consideration of only the lawful information contained in the affidavit.  *Franks, supra*, at

17

170-71; *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir.), *cert. denied*, 474 U.S. 841 (1985).

"Unsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge; to mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof."  *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994) (citing *Franks, supra*, at 171).  Furthermore, "[a]llegations that amount to negligence or innocent mistake do not constitute the required showing.  The focus is not on whether a mistake was made, but rather on the intention behind the mistake."  *Markey*, *supra*, at 324 (D.Conn. 2001).

Here, the record establishes that Agent Lafferty's initial characterization of the dwelling at 85 Roma Avenue as a single family residence, rather than as consisting of two separate apartments, was nothing more than an innocent mistake, rather than a deliberate falsehood or made with reckless disregard for the truth.  Agent Lafferty further explains that prior to discovering that Defendant occupied only the first floor of 85 Roma Avenue, the agents executing the search warrant had only conducted a search to secure weapons Defendant had identified as on the premises, disconnected the computer in Defendant's first floor apartment, and taken "entry" photographs to record the conditions of the premises upon the agents' entry.  Lafferty Affidavit ¶ 2. According to Agent Lafferty, the agents were also advised that the detached garage on the premises was used only be Defendant's son.  Lafferty Affidavit ¶ 3.  Execution of the search warrant was then halted to permit Agent Lafferty to obtain a modification to the original search warrant, limiting the place to be searched to only the first floor apartment at 85 Roma Avenue.  Lafferty Affidavit, ¶ 4.

The Government maintains, and Defendant does not dispute, that the fact that the structure at 85 Roma Avenue was not a single family residence but, rather, contained two apartments, was not apparent from an exterior view of the structure.  In particular, Agent Lafferty explains that upon arriving at 85 Roma Avenue to execute the search warrant, the executing investigating agents made a sweep of the exterior of the dwelling at 85 Roma Avenue, and were informed by Defendant that "the apparent one family residence had been divided so that there is a second floor apartment/flat which can only be accessed through the side door."  Lafferty Supplemental Affidavit ¶ 2.

The Government's assertion that the structure appears to be a single family residence is corroborated by the fact that the number "85" was the only house number appearing on the structure.  Lafferty Affidavit ¶ 2.  Nor is there any indication that there was more than one mailbox on the premises which would signify that the structure was anything other than a single family residence.

Defendant's address is listed on his New York State driver's license simply as "85 Roma Avenue," with no other words describing that the structure at that address was anything other than a single family residence, such as, for example, "85 Roma Avenue, Lower Apt."  Lafferty Affidavit ¶ 2.  *See* also Lafferty Affidavit ¶ 7 (a check of Defendant's son's vehicle license plate tag revealed Defendant's son's address was "85 Roma Avenue" and did not specify a separate apartment).  An FBI query of the National Comprehensive Report using Defendant's biographical information also revealed Defendant's address as "85 Roma Avenue."  Lafferty Affidavit ¶ 2.  Further, in a conversation with FBI Special Agent David Washington on February 3, 2003, on an unrelated matter, Defendant stated that he resided with his wife and son.  Lafferty

Affidavit ¶ 5.

Accordingly, nothing in the record supports a finding that Defendant's assertion

that the initial characterization of 85 Roma Avenue as a single family residence was a

"deliberate falsehood," or was made with "reckless disregard for the truth," *Salameh*,

*supra*, at 113, or, as Defendant asserts, Defendant's Memorandum at 17, a "glaring

misrepresentation," rather than an innocent mistake.  *Markey*, *supra*, at 324.  Nor does

Defendant offer the required explanation as to how such erroneous mischaracterization

of the premises was necessary to establish probable cause to support the search

warrant.  *Salameh*, *supra*, at 113.  There is, therefore, no basis for a *Franks* hearing.


## CONCLUSION

Based on the foregoing, Defendant's motion to suppress evidence (Doc. No. 11),

should be DENIED without a hearing.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    May <u>27</u>, 2005
             Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 27, 2005
            Buffalo, New York